UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:

Emory M. Davis and
Carol C. Davis

        Debtors

CASE NO. 03-36611

CHAPTER 13

Kenneth Mitan, et al.,

        Plaintiffs

Adv. Proc. No. 04-03322

vs.

Emory M. Davis and
Carol C. Davis,

        Defendants.

**MEMORANDUM-OPINION**

THIS ADVERSARY PROCEEDING is before the Court at the conclusion of the trial upon the merits of Plaintiffs' claims for libel and intentional interference with contractual relations and/or prospective advantage arising from the creation and maintenance by Defendants of an Internet website, "www.mitanalert.com" (the "Website").[1] As more fully discussed below, the Court finds in favor of only the Plaintiff, Frank Mitan, with respect to his claim for libel against Defendants, but

---

[1] The natural person Plaintiffs, Kenneth Mitan and Frank Mitan, assert libel claims against Defendants. The Plaintiffs' Complaint, however, is somewhat vague as to the entity Plaintiffs' claims asserted against Defendants. At the trial upon the merits, Plaintiffs stated that the entity Plaintiffs' claims are for "tortious interference with business." Under Kentucky law such claims are brought as claims either for "intentional interference with contractual relations" or "intentional interference with prospective advantage." *See CMI, Inc. v. Intoximeters, Inc., 918 F.Supp. 1068 (W.D.Ky. 1995).*

1

finds in favor of Defendants with respect to all other claims. By virtue of 28 U.S.C. §§157(b)(2)(B), (I) and (O) this is a core proceeding.[2] The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

Defendants filed their Chapter 13 bankruptcy petition on September 22, 2003. Defendants filed their proposed Chapter 13 plan on October 20, 2003, after which several creditors, including the entity Plaintiffs, objected to confirmation. Several creditors, including the entity Plaintiffs also moved for dismissal of Defendants' Chapter 13 bankruptcy case. After several hearings and continued Section 341 meetings of creditors, Defendants' Chapter 13 plan was confirmed by the Court on November 30, 2004. The motions to dismiss Defendants' Chapter 13 bankruptcy case were either withdrawn or rendered moot by the relevant creditors' withdrawal of their proofs of claim against Defendants.[3]

This Adversary Proceeding was initiated on November 24, 2004. The Plaintiffs consist of two natural persons, Kenneth Mitan and Frank Mitan, and several related entities. The natural person Plaintiffs claim that Defendants have libeled them through statements published on the Website. The entity Plaintiffs claim that Defendants have used the Website to interfere with their business, resulting in damages and lost business opportunities.

Defendants filed a Motion for Summary Judgment in this Adversary Proceeding, which the

---

[2]The Court has questioned whether the libel claims of Kenneth Mitan and Frank Mitan might more properly be heard by the United States District Court as "personal injury tort" claims in accordance with 28 U.S.C. §157(b)(5). After further considering the matter, aided in no small part by largely concurring post-trial briefs filed by Plaintiffs and Defendants, the Court agrees with both Plaintiffs and Defendants that libel does not constitute the kind of "personal injury tort" envisioned by 28 U.S.C. §157(b)(5) and that, therefore, this Court properly exercises jurisdiction over Kenneth and Frank Mitan's libel claims. *See In re Cohen, 107 B.R. 453 (S.D.N.Y. 1989).*

[3]The Court notes in particular that all of the entity Plaintiffs withdrew their proofs of claim at the hearing on Defendants' objections to those claims.

Court denied on June 20, 2005.[4]  The Court conducted a trial upon the merits on September 2, 2005, after which the parties filed post-hearing briefs and the Court took this matter under submission.

This Adversary Proceeding is in some respects a virtual continuation of a libel suit concerning the Website brought by Plaintiff Kenneth Mitan against Defendants in the U.S. District Court for the Western District of Kentucky styled *Mitan v. Davis, et al., No. 3-00CV-841-5* (referred to herein as "*Mitan v. Davis*").  In that case too, Plaintiff Kenneth Mitan claimed that Defendants used the Website to libel him.  There, the U.S. District Court for the Western District of Kentucky (the "District Court") applied Kentucky state law and dismissed all but one of Kenneth Mitan's claims against Defendants on grounds that he failed to bring the claims within Kentucky's statute of limitation for libel.  *Mitan v. Davis, 243 F.Supp.2d 719,724 (W.D.Ky. 2003).*  The District Court held that the remaining claim could proceed because the allegedly defamatory material had been added to the Website less than one year prior to Kenneth Mitan's Complaint. *Id.*  Action on that surviving claim was stayed by the filing of Defendants' Chapter 13 bankruptcy case, although the Court has since terminated the automatic stay to permit the case to proceed.

After the District Court's decision in *Mitan v. Davis* but within one year prior to the initiation of this Adversary Proceeding, Defendants substantially updated the Website.  Defendants added a "Breaking News!" section the Website homepage that includes links to five public documents, as follows:

> Breaking News!
> 1. Governor of Michigan declares Kenneth Mitan a Fugitive from Justice and issues a requisition for rendition![PDF 30k]
> 2. Governor of Michigan appoints an agent for Mitan's arrest![PDF 30k]
> 3. Michigan Judge issues bench warrant for Mitan's arrest![PDF 98k]
> 4. Indiana Federal Court issues "Order and Warrant for Body Attachment"...[PDF 481k]
> 5. Mitan files for bankruptcy in California...[PDF 469k]

---

[4]Defendants also filed a Motion to Dismiss with prejudice on grounds that Plaintiffs Kenneth Mitan and Frank Mitan had failed to appear at a properly noticed deposition.  Plaintiffs themselves filed a Motion to Dismiss without prejudice on grounds that the Plaintiff with most of the knowledge necessary to pursue this action, Kenneth Mitan, was at the time incarcerated and unavailable to assist counsel in preparation of the case.  Both Motions were held in abeyance pending further Order of the Court.  By separate Orders entered on this date, the Court has denied both Motions to Dismiss.

3

Defendants also added an "Update!" section to the Website's homepage that states as follows:

> Update!
>
> The following is supported by law enforcement booking records.
>
> • Ken Mitan aka John Smith aka John Adams aka John Adams Smith was in jail from May 26 2004 until mid August, serving this time in Louisiana and Michigan.
> • Ken Mitan was in jail in Los Angeles from 1/12/05 until 4/19/05 under $1,000,000 bond for a felony count. On 4/19/05 he pled out on a count of falsely obtaining a drivers license and was released for time served. His current whereabouts is not know.

Defendants updated the Website page entitled "AKA" by including links to public documents, which appear as follows:

> To view some recent public record documents, click on any one of the following:
>
> 1. Mitan files for Bankruptcy in California
> 2. Bench Warrant issued in Michigan
> 3. Order and Warrant for Body Attachment (Indiana)
> 4. Judgment issued in Jefferson Circuit Court!
> 5. US District Court for Northern Ohio-Duval
> 6. Michigan Court of Appeals-Fransorson
> 7. Superior Court of California-Reeder Complaint, note this only reflects plaintiff position.
> 8. Sanctions in Frandorson case
> 9. Michigan Appeals Court
> 10. Arkansas Business

Finally, Defendants updated the Website page entitled "Family" by adding two booking photographs of Kenneth Mitan, from the Gretna Louisiana police and Redondo Beach police, respectively.

As it stands now, the Website devotes itself to detailing Defendants' business dealings with Kenneth Mitan and cautioning readers with regard to dealing with Kenneth Mitan, members of his family and companies owned or controlled by him. The Website's very name, "www.mitanalert.com," more than hints at Defendants' purpose. When one examines the contents of the Website itself, its "scandal sheet" tenor becomes immediately obvious. Defendants have placed prominently at the top of the Website homepage a photograph of Kenneth Mitan and a photograph of his brother, Keith Mitan, each with captions stating that the person has been, among

other things, "convicted" of "criminal charges" or "criminal contempt charges," respectively. The text of the homepage begins: "DO YOU KNOW THESE TWO?? We do! Let us tell you how. In 1998 we had the very unpleasant experience of selling our business to Mr. Ken Mitan." Next follows allegations of bad checks, the recently added "Breaking News!" and "Update!" sections described above, and a boldly outlined box of text that, among more allegations of bad checks and diverted funds, makes it clear to the reader that Kenneth Mitan's family assists him in illegal activity. It states in part:

> This pattern of activity is *by no means the lone act* of an accomplished *con man*, it is the continuation of dozens, perhaps hundreds of similar acts by the *team* of Ken and Keith Mitan and their mother Teresa Mitan....So many people have had their lives destroyed by this *family*....How does this continue to go on? Why hasn't the *legal system* brought them to *justice*?

> (Emphasis added)

Further insinuating that this is a family criminal enterprise, Defendants have included a Website page entitled "Family," which contains photographs and dates of birth of Kenneth Mitan, Keith Mitan and their mother, Teresa Mitan, the aforementioned "mug shots" of Kenneth Mitan, and the following statements:

> FATHER IS: FRANK J. MITAN D.O.B. 04/13/25

> WE BELIEVE THERE ARE OTHERS. LET US KNOW.

The Website also insinuates that Kenneth Mitan, and, in light of the statements discussed above, his family members, use aliases and shell companies to deceive potential business partners. On the Website page entitled "AKA," Defendants state, among other things:

> Mr. Mitan uses numerous companies and variations of his name, all of which help to confuse those seeking information on him , and definitely blurs the areas of responsibility and accountability....Below is a partial list of the companies Mr. Mitan "uses." One could easily see, as we have, that by using a series of these companies in a given transaction, it would be very difficult to nail down the legally responsible party. It would be quite possible to find that the final party in the series *may not be*

5

*real* or may not be financially responsible. *My guess is that none of this is an accident*.

(Emphasis added)

The implication is that a company on the list or other company owned by Kenneth Mitan, or family, might not be "real," but rather simply a vehicle to assist in a Mitan family scheme.

Other lurid aspects of the Website include accounts of persons allegedly scammed by Kenneth Mitan, an affidavit by a person allegedly employed by Kenneth Mitan that recounts his deceptive business practices, and a written transcript of a television news broadcast entitled "Kenneth Mitan Exposed."

## CONCLUSIONS OF LAW

### Defendants' Motion for "Directed Verdict"

At the trial on the merits, Defendants moved at the close of Plaintiffs' case-in-chief for a "directed verdict" with respect to the various claims of Plaintiffs.[5] With regard to Frank Mitan's libel claim, Defendants assert that the applicable statute of limitations bars him from pursuing his claim and that Frank Mitan failed to prove that the Website libels him. With regard to Kenneth Mitan's libel claim, Defendants assert that the filing of Kenneth Mitan's personal bankruptcy and the fact that the Chapter 7 Trustee in that bankruptcy has not abandoned the libel claim, deprive Kenneth Mitan of standing to bring an action for libel against Defendants. Finally, Defendants assert that the applicable statute of limitations also bars the entity Plaintiffs from asserting their claims against Defendants and that the entity Plaintiffs failed to prove that the Website libels them.

### Kenneth Mitan

Defendants' motion is most easily resolved with respect to Kenneth Mitan because he conceded at the trial upon the merits that he lacks standing. The Defendants' assertion with regard to Kenneth Mitan being correct, as conceded by Plaintiff Kenneth Mitan, the Court finds that Kenneth Mitan lacks standing to assert a libel claim against Defendants and that his claim must be dismissed as a matter of law.

---

[5]Although Defendants moved for a "directed verdict," the more proper nomenclature is "Judgment on Partial Finding" under Federal Rule of Civil Procedure 52(c).

6

Entity Plaintiffs

Defendants' motion with respect to the entity Plaintiffs is also relatively easy to resolve. Defendants argue that the entity Plaintiffs' claims must be denied on statute of limitations grounds because the updates to the Website did not contain defamatory material. Defendants also assert that the entity Plaintiffs failed to prove that the Website libeled them. It is clear from statements by Plaintiffs' counsel, however, that the entity Plaintiffs assert claims for tortious interference with contractual relations and/or prospective advantage, not libel. Therefore, Defendants' motion with respect to the entity Plaintiffs must be denied because it fails to address the claims actually asserted.

Frank Mitan

Defendants' motion with regard to Frank Mitan is much more difficult to resolve because it requires consideration of the evolving law of defamation via the Internet.

As noted previously, this Adversary Proceeding is in some respects a virtual continuation of *Mitan v. Davis*. In that case, the District Court dismissed all but one of Kenneth Mitan's claims against Defendants on grounds that he failed to bring the claims within Kentucky's statute of limitation for libel. Kentucky's statute of limitations for libel is found at KRS 413.140(1)(d), which states that an action for libel must be brought within one year after the date the cause of action accrues. Under Kentucky case law, a cause of action for libel accrues upon the date of publication. *See Caslin v. General Elec. Co., 608 S.W.2d 69 (Ky. Ct. App. 1980).* No Kentucky state court opinion expressly addresses what constitutes "publication" for purposes of defamation via the Internet.

The District Court in *Mitan v. Davis*, however, found that a Kentucky court would apply the so-called "single publication" rule to Internet publications. According to the single publication rule, publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable statute of limitation runs from the date of that publication. *Gregoire v. G.P. Putnam's Sons, 298 N.Y. 119 (Ct. App. N.Y. 1948).* The District Court came to its conclusion after carefully examining all of the then extant cases on statute of limitations for Internet defamation, which led it to conclude that the best approach is that taught by *Firth v. State, 98 N.Y.2d 365 (2002)* and *Van Buskirk v. New York Times Company, 2000 WL 1206732 (S.D.N.Y. 2000).* Agreeing with the analysis of *Firth* and *Van*

7

*Buskirk*, the District Court found no reason to distinguish Internet website postings from any other aggregate publications and, accordingly, held that the statute of limitations begins to run on the date allegedly defamatory statements are first posted on the website in question. *Mitan v. Davis, 243 F.Supp. at 724*.

Plaintiffs argue in this Adversary Proceeding that additions to the Website after the decision in *Mitan* resulted in a "republication" of the Website, warranting application of a new statute of limitations.[6] The District Court in *Mitan v. Davis* did not address whether a "republication" takes place if a website is updated. Although raised in this Adversary Proceeding, Kenneth Mitan apparently failed to raise the issue before the District Court.

*Firth*, on the other hand, does provide guidance on the issue of republication in the context of Internet postings. In *Firth*, the website in question was a general state government information site that posted executive summaries and links to reports prepared by government agencies. *Firth v. State, 98 N.Y.2d at 367*. The allegedly defamatory content consisted of a report on Department of Environmental Conservation weapons acquisition by the Office of the State Inspector General. *Id.* In arguing that a republication had occurred, the plaintiff pointed to a later addition to the website of a separate report by the Office of the State Inspector General regarding the Department of Motor Vehicles ("DMV"). *Id. at 368.* The Court found that the addition of the DMV report did not serve as a republication of the allegedly defamatory material. *Id. at 371*. In doing so, it characterized the DMV report as "unrelated information" and stated that "it is not reasonably inferable that the addition was made either with the intent or the result of communicating the earlier and separate defamatory information to a new audience."*Id.*

A very recent case addresses the issue of republication in the Internet context and provides additional guidance. In *Churchill v. State, 378 N.J.Super.471 (2005)*, the Court found that mere

---

[6]The concept of republication is essentially an exception to the single publication rule. The justification for the exception is that the subsequent publication reflects a conscious and deliberate decision to expand the original scope of distribution of the offending material. *Rinaldi v. Viking Penguin, Inc., 52 N.Y.2d 422 (Ct. App. N.Y. 1981)* For example, courts have found as separate publications warranting application of the republication exception morning and evening editions of a newspaper, *Cook v. Conners, 215 N.Y. 175 (Ct. App. N.Y. 1915)*, separate editions of a book, *Mack, Miller Candle Company v. The MacMillan Company, 239 A.D. 738 (S.Ct. N.Y. 1934)*, and a paperback version of a hardback book, *Rinaldi v. Viking Penguin, 52 N.Y.2d at 422*.

modifications to the *way* information is accessed, as opposed to changes in the nature of the information itself, does not constitute republication. *Id. at 483-44.* There the website in question had been modified by moving and altering a menu bar and adding a "press release" that made the offending material more prominent and more easily accessible. *Id. at 477.* The Court, however, found that such changes were "merely technical" and that, although they altered the means by which website visitors could access the report in question, they did not alter the "substance or form" of the report. *Id. at 483.*

The courts in both *Firth* and *Churchill* found that the material in question had not been republished because the website updates were not related to the substance of the allegedly defamatory material. By negative implication, changes related to the substance of the allegedly defamatory material would have constituted republication. Otherwise the courts in those cases would not have taken such pains to distinguish non-substantive alterations from substantive alterations.

In the instant case, Defendants have clearly made more than technical changes to the Website. They have changed its substance and form by adding "Breaking News!" and "Update!" sections and other sections containing substantive information as well as links to other websites containing substantive information.

Furthermore, the Website is not a general information website that simply collects discrete reports concerning different subjects. Described most innocuously, the Website is entirely devoted to detailing Defendants' dealings with Kenneth Mitan and cautioning readers with regard to dealing with Kenneth Mitan, members of his family and companies owned or controlled by him. So, in this case, the update to the Website did consist of related information, as opposed to the fact situation in *Firth*.

Having found that the changes to the Website relate to the original allegedly defamatory material and that such changes altered both the substance and the form of the original material, this Court finds that a republication of the original material has occurred. The republication resulted in application of a new one-year limitations period, within which Plaintiffs indisputably brought this Adversary Proceeding. Accordingly, the Court must deny Defendants' motion with respect Frank Mitan insofar as it is premised upon the statute of limitations.

The Court must now consider whether Plaintiff Frank Mitan submitted proof to establish a

9

prima facie case of libel against Defendants. If not, Defendants would be entitled to judgment in their favor as a matter of law.

As previously noted, this Court must apply the substantive law of Kentucky in considering libel claims against Defendants. Under Kentucky law, libel is, essentially, an injury to the reputation of a person in public esteem by writing or by contemporary means analogous to writing. *See Stringer v. Wal-mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2005). To establish a prima facie case, a plaintiff must provide proof of: (a) defamatory language; (b) about the plaintiff; (c) which is published; and (d) which causes injury to reputation. *Id.*

"Defamatory language" is broadly construed as language that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Id.* The terms should be construed in their most natural meaning and should be measured by the natural and probable effect on the mind of the average reader. *Id.* A court must analyze an allegedly defamatory article in its entirety and determine if its gist or sting is defamatory. *McCall v. Courier-Journal and Louisville Times Company*, 623 S.W.2d 882 (Ky. 1981).

In this case, the Website clearly contains defamatory language. As the Court has noted previously, Defendants have devoted the Website to deterring persons from doing business with Kenneth Mitan and members of his family. Although the Court has previously discussed the following excerpt in its Findings of Fact above, the excerpt bears repeating because of its particular significance to Plaintiff Frank Mitan's libel claim. As noted, the Website states:

> This pattern of activity is *by no means the lone act* of an accomplished *con man*, it is the continuation of dozens, perhaps hundreds, of similar acts by the *team* of Ken and Keith Mitan and their mother Teresa Mitan....So many people have had their *lives destroyed by this family*....How does this continue to go on? Why hasn't the *legal system* brought them to *justice*?

(Emphasis added)

An average person reading the above statement together with other similar statements within the Website would conclude that Kenneth Mitan and his family are con artists and that one should avoid doing business with them or risk being victimized. Clearly statements such as these are defamatory.

The issue of whether defamatory language is "about the plaintiff" is straightforward: does

10

it identify the plaintiff or not?[7]  *Stringer v. Wal-Mart Stores, 151 S.W.3d at 793-94.*  Here, Defendants expressly identify Frank Mitan by name in the Website.  As noted previously, Defendants have placed the following on the "Family" page of the Website under two "mug shots" of Kenneth Mitan:

>   FATHER IS: FRANK J. MITAN  D.O.B. 04/13/25

>   WE BELIEVE THERE ARE OTHERS. LET US KNOW

The clear implication of the foregoing is that Plaintiff Frank Mitan is a member of the Mitan family of con artists.  The Court finds that the defamatory language is about Plaintiff Frank Mitan.

Defamatory language is "published" when it is intentionally or negligently communicated to someone other than the party defamed.  *Id. at 794.*  The Court has previously discussed the publication of the Website in addressing Defendants' statute of limitations argument.  The defamatory language has been published.

The final element of a prima facie case of libel is somewhat more complicated than the first three elements.  The proof needed to establish that the defamatory language has caused an "injury to reputation" depends upon whether the statement in question constitutes "libel per se" or "libel per quod."  *Id.*  If words are considered defamatory "per se," damages are presumed and the person defamed may recover without allegation or proof of special damages.  *Id.*  In the other case, recovery may be had only upon allegation and proof of special damages.  *Id.*  To be considered defamatory per se, written or printed words must be false and such that they, in and of themselves, "tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame."  *Id.*  For example, false accusation of theft is actionable "per se."  *Id.*  Because the law will not presume misconduct of a person, the falsity of defamatory words is presumed.  *Id. at 796.*

As can be seen by language of the Website excerpted above, Defendants have accused the Mitan family of being a team of con men and have specifically identified Frank Mitan as a member of that family.  "Con man" carries with it a clear connotation of thievery.  Thus, the overall

---

[7]Although in this case Plaintiff Frank Mitan is identified by name, the Court notes that under Kentucky law a plaintiff need not be specifically identified in the defamatory matter itself so long as the plaintiff's friends and acquaintances familiar with the incident could reasonably identify the plaintiff as the person defamed.  *Stringer v. Wal-Mart Stores, 151 S.W.3d at 793-94.*

impression created by the Website is that, like Kenneth, Keith and Teresa Mitan, Frank Mitan is a thief. Under Kentucky law, accusation of theft or other "felonious misappropriation" is actionable as libel per se. *Id. at 795.* Accordingly, the Court finds that the statements contained within the Website constitute libel per se and are presumed to have caused injury to Plaintiff Frank Mitan's reputation.

Based on the foregoing, the Court finds that Plaintiff Frank Mitan succeeds in establishing a prima facie case of libel against Defendants. Accordingly, Defendants' motion for "directed verdict" must be denied with respect to Plaintiff Frank Mitan.

## **Substantive Claims of Frank Mitan and Entity Plaintiffs**

Having denied Defendants' motions for "directed verdict" with regard to Frank Mitan and the entity Plaintiffs, the Court must now consider the substance of Frank Mitan's claim for libel and the entity Plaintiffs' claims for tortious interference with contractual relations and/or prospective advantage.

### Entity Plaintiffs' Claims for Tortious Interference

The Court addresses the entity Plaintiffs' claims for tortious interference with contractual relations and/or prospective advantage first because they are relatively easily disposed of in comparison to Plaintiff Frank Mitan's claim for libel.

Initially, the Court notes that the entity Plaintiffs have not made any assertion as to which law applies to their claims for "tortious interference with business." Nevertheless, where applying non-bankruptcy law, the bankruptcy court generally will apply the choice of law principles of its forum state to determine which state's substantive law should be applied to resolve a multi-state dispute. *In re AVN Corporation, 248 B.R. 540 (Bankr. W.D.Tenn. 2000).* Under Kentucky choice of law rules, courts should apply Kentucky law if there is a significant connection to Kentucky, even if there might exist a more significant connection with another state. *Custom Products, Inc. v. Fluor Daniel Canada, Inc., 262 F.Supp.2d 767 (W.D.Ky. 2003).*

Here, Defendants maintain the Website from their home in Kentucky. Despite the fact that the alleged harm resulting from the creation and maintenance of the Website might have manifested itself in other states, the Court finds that Defendants' actions within Kentucky sufficiently significant to warrant application of Kentucky law to the entity Plaintiffs' tortious interference

claims.[8]

Under Kentucky law, under either a claim for tortious interference with contractual relation or a claim for tortious interference with prospective advantage, the plaintiff bears the burden of proving, among other things, that the plaintiff actually suffered damages as a result of the defendant's actions. *CMI, Inc. v. Intoximeters, Inc., 918 F.Supp. at 1079, 1081 (damages must be proven to a reasonable degree of certainty, which has the salutary effect of weeding out claims that do not involve seriously damaging conduct).* In the instant case, the entity Plaintiffs utterly failed to provide any evidence that any of them suffered any damages as a result of Defendants' alleged actions.

Furthermore, aside from self-serving, hearsay testimony by Kenneth Mitan, the *only* proof that Defendants had anything to do with the entity Plaintiffs' business dealings with other companies came from representatives of two companies, both of whom testified credibly and unequivocally that Defendants and the Website had *nothing* to do with their companies' respective disputes with the entity Plaintiffs.[9] Given the entity Plaintiffs' failure to present even a hint of proof of damages, much less "interference" by Defendants, the Court need not consider other elements of the tortious interference claims but must find in favor of Defendants with regard to such claims.

Plaintiff Frank Mitan's Claim for Libel

In addressing Defendants' motion for "directed verdict," the Court has concluded that Plaintiff Frank Mitan has presented a prima facie case of libel by Defendants. The Court reiterates that finding here.

Once a plaintiff has established a prima facie case of libel, however, a defendant may yet avoid liability by raising certain defenses. For example, a defendant may establish that the allegedly

---

[8]The District Court apparently reached the same conclusion in *Mitan* with regard to libel claims against Defendants, given its careful examination of Kentucky's statute of limitations.

[9]Cameron F. Clark, Esq., testified on behalf of Pinnacle Construction, a company that Plaintiff MP Operations Department Thirty Seven, Inc. unsuccessfully attempted to acquire. His testimony was submitted by way of deposition as part of the record in this Adversary Proceeding. Larry Richard Lear testified on behalf of Lear's Quality Heating and Air Conditioning Incorporated, a company acquired by an entity owned or controlled by Plaintiff Kenneth Mitan. His testimony was preserved for the record at a hearing in Defendants' underlying Chapter 13 bankruptcy case and placed into evidence in this Adversary Proceeding without objection.

defamatory words are true. *Stringer v. Wal-Mart Stores, 151 S.W.3d at 795.* In this case, Defendants have raised no defenses against the libel claim of Plaintiff Frank Mitan other than the statute of limitations defense previously addressed by the Court. Although Defendants have argued that the defamatory statements of the Website are true as to *Kenneth Mitan*, Defendants have provided no proof whatsoever that *Frank Mitan* has engaged in any activity warranting identifying him as a con artist or part of a team of con artists. Whatever crimes might have been committed by Kenneth Mitan, the sins of the son cannot be so easily visited upon the father. Defendants having presented no viable defenses to Plaintiff Frank Mitan's prima facie case of libel, the Court must find in favor of that Plaintiff.

Having found that Defendants libeled Plaintiff Frank Mitan through the Website, the Court must now determine what damages and other remedies, if any, should be granted. Here the Court is faced with one final dilemma. Plaintiff Frank Mitan failed to provide any credible proof concerning the nature and extent of his damages from the libel. Frank Mitan did testify, somewhat vaguely, that he lost initial investments in several companies because of the Website, totaling approximately $1,460,000, and that he has been sued for $1,000,000. Such testimony, however, was obviously self-serving and uncorroborated by any documentation or testimony by disinterested third-parties. In particular, Plaintiff Frank Mitan failed to submit any documentation that he had ever invested the amounts allegedly lost, that such investments were in fact lost, and that Defendants caused such loss through the Website. Although proof of special damages is not necessary to establish *liability* for libel per se, given the flimsy proof as to the nature and extent of Plaintiff Frank Mitan's damages, the Court cannot in equity award damages in nearly the amount alleged by him.

On the other hand, having proven libel per se, Plaintiff Frank Mitan is entitled to at least nominal damages. *See Ray v. Shemwell, 217 S.W. 351 (Ky. 1919).*[10] Considering the entire record as a whole and the particular facts and circumstances of this case, the Court finds that Plaintiff Frank Mitan should be awarded nominal damages in the amount of $5,000.00.

The award of damages shall not, however, constitute a non-dischargeable debt under 11

---

[10]The Court is also aware that Kentucky Courts have held that in cases of defamation per se, malice on the part of the defendant is presumed and a jury may in its discretion award punitive damages. *See Ray v. Shemwell, 217 S.W. at 353.* Nevertheless, given the facts and circumstances of this case, the Court declines to award punitive damages.

14

U.S.C. §523(a)(6) as demanded by Plaintiffs. In Chapter 13 bankruptcy cases, the so-called "super-discharge" provided by 11 U.S.C. §1328(a) renders 11 U.S.C. §526(a)(6) inapplicable.

Even if §526(a)(6) were to apply, for example if Defendants converted their bankruptcy to a Chapter 7 case, the award of damages would be dischargeable. 11 U.S.C. §526(a)(6) excepts from discharge debts arising from the willful and malicious injury by the debtor to another entity or to the property of another entity. A plaintiff seeking a determination of non-dischargeability under this provision must prove that the debtor intended to cause injury through his or her action, not simply that the debtor intended the action that ultimately caused the harm. *See Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998).* In the Sixth Circuit, the intentional tort of libel meets the requirements of 11 U.S.C. §526(a)(6) only where the debtor knows the published statements were false. *Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986).* Mere reckless disregard for the truth or falsity of the statement, which can support a libel verdict, is not a willful and malicious injury for purposes of 11 U.S.C. §526(a)(6). *Id.*

In this case, Plaintiff Frank Mitan presented no evidence whatsoever that Defendants published statements about him that they *knew* were false. Although falsity is presumed for purposes of determining whether the statements were defamatory, and Defendants did not rebut that presumption, there is no way for the Court to determine from the record in this case whether Defendants knew the statements were false or simply acted with reckless disregard as to their veracity. Accordingly, the Court cannot find that Defendants' libel of Plaintiff Frank Mitan meets the requirements of 11 U.S.C. §526(a)(6).

Finally, the Court in its discretion, in addition to the monetary damages assessed above, also elects to use its inherent power of equity under 11 U.S.C. §105 (a) to Order as a further remedy that any reference to Frank Mitan, whether direct or indirect, be promptly stricken from the Website, and that the Website itself be removed from the Internet and Defendants enjoined from maintaining it or any similar website for the duration of Defendants' Chapter 13 plan. The latter directive is designed to purge to some extent any harm done to Frank Mitan by the Website by taking it out of the public eye for a time and allow the link between Frank Mitan and the wrongs falsely attributed to him by the Website to fade in the public memory.

The Court will enter a separate Order consistent with the foregoing. *Fed. R. Bankr. P. 9021.*